UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                                                                          DECISION AND ORDER
v.                                                                        08-CR-090A

JEFFREY ROBERT ARENBURG,

                          Defendant.

---

## INTRODUCTION

      The defendant, Jeffrey Arenburg, who proceeded *pro se* at trial, was convicted of assault of a federal officer in violation of 18 U.S.C. § 111.  Following trial, the defendant's standby counsel filed a motion for a new trial under Fed. R. Crim. P. 33 on the ground that the defendant was not competent to represent himself and suffered from a "paranoid thought process" during trial.[1]  The government opposes the motion arguing that the defendant was competent to represent himself.  For the reasons stated, the motion is denied.

## BACKGROUND

      On November 29, 2007, the defendant sought entry into the United States from Canada via the Peace Bridge in Buffalo, New York.  The defendant did not have valid

---

[1] It is not clear whether the defendant has consented to the filing of this motion. However, as the motion relates to the defendant's mental competency, the Court will consider the motion regardless of whether it is made with the defendant's consent.

documentation for entry and was referred to secondary inspection.  Customs and Border Protection Officer Jason Hart attempted to conduct a "pat down" of the defendant, during which the defendant punched Officer Hart in the face.  The defendant was arrested and charged by criminal complaint with violating 18 U.S.C. § 111(b).

Counsel was appointed to represent the defendant.  Upon counsel's request, United States Magistrate Judge H.  Kenneth Schroeder, Jr., ordered that the defendant undergo an examination pursuant to 18 U.S.C. § § 4241 and 4242 to assess his mental competency to stand trial and conduct a criminal responsibility evaluation.[2]  A criminal responsibility evaluation dated February 27, 2008 found that the defendant did not suffer from a mental defect but that he did suffer from a mental disease, specifically, Schizophrenia, Paranoid Type, in remission.  However, the psychologist determined that the defendant's mental disease did not impair his ability to appreciate the wrongfulness of his conduct at the time that it occurred.  A mental competency evaluation dated that same date found that the defendant did possess a rational and factual understanding of the proceedings against him, had the capacity to assist legal counsel in his defense and could rationally make decisions regarding legal strategy.  Accordingly, the psychologist concluded that the defendant was competent to stand trial.

On April 3, 2008, an indictment was returned against the defendant charging him with assault of a federal officer in violation of 18 U.S.C. § 111(a) and (b).  The defendant was arraigned on that same date. Following arraignment, the defendant expressed a desire to proceed *pro se.*  Before determining whether the defendant could waive his

---

[2]  The defendant has a history of mental illness.

right to counsel, Magistrate Judge Schroeder asked the defendant and his counsel whether they wanted to challenge the psychological reports.  The defendant expressed a desire to waive his right to a competency hearing.  Magistrate Judge Schroeder asked defendant's counsel whether, as an officer of the court, he saw anything in the reports that would cause him to want to challenge the competency determinations.  Defense counsel indicated that he did not.  The government also declined to challenge the reports.  Magistrate Judge Schroeder found that the defendant understood the nature of the charges against him, was able to assist in his defense, and was competent to stand trial.  He also found that the defendant made a knowing and voluntary waiver of his right to a competency hearing.

     Magistrate Judge Schroeder then addressed the issue of the defendant's desire to proceed *pro se.*  He engaged in a lengthy and comprehensive colloquy with the defendant on that issue that lasted over two hours.  Magistrate Judge Schroeder advised the defendant of his rights at trial, including his right to proceed *pro se,* and the perils of doing so.  The Magistrate Judge explained that the defendant had a right to challenge the government's evidence and to raise the issue of competency as a defense.  The defendant indicated that he understood and that he had discussed the issue with his attorney.  Tr.[3] at 39-40.  He affirmed that he understood his right to proceed to trial and to cross-examine government witnesses, he understood the nature of the charges against him, and he understood the purpose of asking potential jurors questions in *voir dire*.  He also understood the government's burden of proof.  Magistrate

---

[3]  "Tr." refers to the transcript of the hearing before Magistrate Judge Schroeder on April 3, 2008. Dkt. No. 16.

Judge Schroeder explained that if the defendant were to proceed *pro se,* his attorney would be appointed as standby counsel to assist with procedural matters, but that standby counsel's role was very limited.  The defendant affirmed that he understood.

Magistrate Judge Schroeder concluded his lengthy colloquy by asking counsel for the defendant and the government whether they believed further inquiry was needed on any issue.  Counsel for the defendant stated:

> Your Honor, I think your inquiry was right to the point and it incorporated all the thoughts of the case you mentioned and it is a classic pattern I think that should be adopted in the rules as a way to determine whether or not a person is entitled to be *pro se*, and I think the responses you elicited from Mr. Arenburg show that he is quite able to appear as his own attorney.

Tr. at 69.  Counsel for the government stated that the inquiry was "very thoughtful and thorough."  Based upon counsel's comments and the defendant's responses during the colloquy, Magistrate Judge Schroeder found that the defendant had made a knowing and intelligent waiver of his right to contest the competency report and a knowing and intelligent waiver of right to counsel.   At the conclusion of that proceeding the defendant requested an immediate trial.

On April 7, 2007, the parties appeared before this Court for a meeting to set a trial date.  The Court inquired into whether the defendant had changed his mind on the issue of proceeding *pro se*, and the defendant stated that he had not.  The defendant did not exhibit any unusual behavior, appeared coherent and responded appropriately to the Court's questions.[4]

---

[4] At the conclusion of the proceeding the defendant  asked the Court to read a letter he had written.  The letter was read aloud in Court by the courtroom deputy.  In the letter, the defendant referred to "radio stations airing my thought all over the world" and the "airing of my

The parties next appeared on May 15, 2008 for a final pretrial conference. The defendant asked for the return of some personal property that had been taken from him upon his arrest, asked permission to wear his own clothes (and not prison garb) during trial and requested to be returned to his cell promptly after each day of trial so that he could prepare for the next day's proceedings. The defendant also requested a physical examination by a doctor as part of his defense.[5] Again, the defendant did not exhibit any unusual behavior, appeared coherent and responded appropriately to the Court's inquiry. At no time was any issue raised by any party as to the defendant's competency to stand trial or his ability to represent himself.

Trial commenced five days later, on May 20, 2008. According to the government, immediately before jury selection, the parties had one last discussion about the possibility of a plea. Although the defendant rejected the government's plea offer, the government represents in its papers that the defendant was coherent and lucid during that plea discussion. See Dkt. 32, at 5-6.

At trial, the defendant made various statements before the jury - both during his opening statements and during his cross-examination of government witnesses - wherein he referred to microwave channels in his head, the broadcasting of his thoughts over radio or TV and a conspiracy by MGM. During trial (but outside of the presence of the jury), the government expressed "serious concerns" about the defendant's ability to

---

thoughts through TV channels." However, neither the government nor the defendant's standby attorney raised any issue of competency based upon the letter.

[5] The defendant proffered that he had a back injury that was relevant to the issues at trial. The Court denied the request for a physical examination on relevancy grounds.

represent himself and claimed that the defendant appeared to be making "a farce out of the trial." The defendant objected to the government's suggestion that he was "crazy" or that he was not competent to represent himself. The Court asked the government whether it believed that the defendant was not competent to stand trial. The government took the position that the defendant was competent *to stand trial* but he was not competent *to represent himself*. The defendant took the position that he was competent to do both.[6]

The issue of whether two different standards of competency apply was then pending before the Supreme Court in Indiana v. Edwards, but a decision had not yet been rendered. Accordingly, relying on existing Supreme Court precedent in Godinez v. Moran, 509 U.S. 389 (1993), the Court held that, because the defendant had been found competent to stand trial and no party was taking the position that he was not competent, the defendant was also competent to represent himself at trial.

The defendant was convicted following a two-day trial. After his conviction, standby counsel filed the instant motion under Rule 33, which the government opposes.

## **DISCUSSION**

Upon motion by a defendant, Rule 33 permits this Court to vacate a judgment and grant a new trial if the interests of justice so require. See Fed. R. Crim. P. 33. The

---

[6] Standby counsel took no position.

rule vests a trial judge with "broad discretion" to "order a new trial to avert a perceived miscarriage of justice."  See United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992)).  In evaluating the merits of a Rule 33 motion, the Court is required to strike a balance between weighing the evidence and credibility of witnesses and not wholly usurping the role of the jury.  Id.  Courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility.  The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice.  See Sanchez, 969 F.2d at 1414.  The Court must examine the entire case, take into account all facts and circumstance and make an objective evaluation as to whether "competent, satisfactory and sufficient evidence" supports the jury's verdict.  See Ferguson, 246 F.3d at 134.

Putting aside the competency issue for a moment, there can be no doubt that the jury's guilty verdict was support by sufficient evidence.  Three Customs and Border Protection (CBP) officers testified as to the defendant's assault.  The victim, CBP Officer Hart, described an unprovoked assault by the defendant as Hart was attempting to conduct a pat down search for weapons.  Officer Hart's testimony was corroborated the testimony of CBP Officers Shane Weaver and Michael Hall, who witnessed the assault, and by a videotape of the assault which showed the defendant punch CBP Officer Hart in the face as he was conducting a pat down.  The testimony and the videotape provided ample evidence to support the jury's conviction.

Notwithstanding the substantial evidence in support of the defendant's guilt, standby counsel argues that a new trial is required because of the defendant's "bizarre" references to microwave channels and a conspiracy with MGM.  Counsel does not

challenge to the defendant's competency *to stand trial*.[7]  Rather, the only issue being raised is whether the defendant was sufficiently competent *to represent himself at trial*.

Because the Court did not have the benefit of the Supreme Court's decision in Indiana v. Edwards, ___ U.S. ___, 128 S.Ct. 2379 (2008), when it ruled on the government's mid-trial motion to revoke the defendant's *pro se* status, the Court relied upon existing Supreme Court precedent, specifically, Godinez v. Moran, 509 U.S. 389 (1993), which held that the standard of mental competency required for pleading guilty and waiving the right to counsel is the same as the standard of mental competency required for standing trial.  In Godinez, the Supreme Court considered the issue of whether a defendant who sought to waive his right to counsel and enter a plea of guilty should be held to a higher competency standard than the competency level required to stand trial.  The Court answered the question in the negative, and "reject[ed] the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from) the Dusky[8] standard."  Godinez, 509 U.S. at 398.

In Indiana v. Edwards, the Supreme Court revisited the relationship between mental competency to stand trial and the right of self-representation.  The Court considered the question of whether the Constitution prohibited a state from

---

[7]  Magistrate Judge Schroeder determined that the defendant was competent to stand trial based upon his own observations of the defendant and the competency evaluation.  Neither party has challenged that determination.  Indeed, before and during trial, both parties maintained that the defendant was competent to stand trial.

[8]  See Dusky v. United States, 362 U.S. 402 (1970) (holding that the standard for competence to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him).

denying a defendant's right to self-representation where the defendant had been found competent to stand trial.  The Court ruled that even if a defendant has been found mentally competent to stand trial, a trial court could *insist* that the defendant be represented by counsel (thereby curtailing his right to self-representation) where the defendant lacks the mental competency required to conduct the trial proceedings himself.  The Court distinguished Godinez on two grounds.  First, Godinez involved a defendant waiving his right to counsel and *pleading guilty*.  Godinez did not involve the issue of self-representation *at trial*.  Second, Godinez involved the issue of whether a state could *permit* a "grey-area defendant" to represent himself, not whether a state could *deny* a grey-area defendant the right to represent himself.

The question now before this Court is whether a new trial is required in light of the Supreme Court's holding in Edwards.  That is, in light of Edwards, was this Court required to grant the government's request to revoke the defendant's *pro se* status and, if so, does the failure to do so provide a basis for granting a new trial under Rule 33?

Clearly, as a result of Edwards, this Court had the authority to grant the government's request and revoke the defendant's *pro se* status if the Court believed that the defendant's mental illness was so severe that he was not competent to continue representing himself at trial.  However, that is a very different question from the issue now pending - which is whether the Court was *required* to do so, whether the failure to do so violated due process.  Nothing in Edwards *requires* a court to insist upon representation by counsel where, as here, a *pro se* defendant has been found competent to stand trial and competent to proceed *pro se.*  Rather, Edwards simply "permits judges to take realistic account of the particular defendant's mental capacities

9

by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." Id.  The Supreme Court specifically declined to impose "a more specific standard that would deny a criminal defendant the right to represent himself at trial where the defendant cannot communicate coherently with the court or a jury." Id. at 3288 (internal quotation omitted).

Notwithstanding the defendant's bizarre references to microwave channels broadcasting his thoughts, the defendant in this case did manifest some ability to represent himself at trial.  As noted above, at the final pretrial conference just days before the trial, the defendant coherently asked for the return of personal possessions and requested the opportunity to call a doctor to testify about a prior back injury.  He also asked to be returned to his cell promptly after each trial day so that he could have time to prepare for the next day's proceedings.  The trial lasted only two days, from jury selection to verdict.  During that time, the defendant was not disruptive, displayed appropriate demeanor and was respectful of the Court's rulings.  When the government requested that the defendant's *pro se* status be revoked, the defendant objected.[9] Under all the circumstances, the Court finds that the defendant was sufficiently competent to continue to exercise his right to self-representation, and nothing in the Supreme Court's Edwards decision required this Court to revoke the defendant's *pro se* status over his objections.

---

[9] There was a rational basis for the defendant's objection.  The defendant's desire to proceed *pro se* and to forego any potential insanity defense was clearly motivated by his desire to avoid being incarcerated in a mental institution.  The defendant had previously been found incompetent to stand trial in Canada, after allegedly committing a crime of violence there, and was committed to a mental institution for several years.  The defendant's insistence on standing trial and foregoing any insanity defense was grounded in large part on his somewhat rational desire to avoid indefinite incarceration in a mental health facility.

Furthermore, even if the Court had granted the government's motion and revoked the defendant's *pro se* status, it is doubtful that the jury would have reached a different verdict.  The evidence of the defendant's guilt was substantial, and included not only testimony from three Customs and Border Protection officers who witnessed the incident, but also a videotape of the assault itself which clearly showed the defendant punch CBP Officer Hart in the face as Hart was attempting to pat down the defendant's jacket.  Notably, the only note received from the jury during deliberations was a request to replay the videotape.  Shortly thereafter, a verdict was reached.  Rule 33 permits the Court to order a new trial in order to "avert a perceived miscarriage of justice."  Sanchez, 969 F.2d at 1413.  There is no perceived miscarriage of justice in this case. "Competent, satisfactory and sufficient evidence" supports the jury's verdict and that there is no "real concern that an innocent person may have been convicted."  Ferguson, 246 F.3d at 134 (quoting Sanchez, 969 F.2d at 1414).  Therefore, the motion for a new trial is denied.

## **CONCLUSION**

For the reasons stated, standby counsel's motion for a new trial under Rule 33 is denied.

SO ORDERED.

s/ *Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED:  August 7, 2008